IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARK GIRARDOT, GERHARD R. WITTREICH, and PETER BUTLER, on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE CHEMOURS COMPANY, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) Civ. No. 16-263-SLR ) ) ) ) ) |

**MEMORANDUM**

At Wilmington this 29th day of March, 2017, having reviewed defendant's motion to dismiss and the papers filed in connection therewith;

IT IS ORDERED that defendant's motion to dismiss (D.I. 6) is granted, for the reasons that follow:

1. **Background.** On October 24, 2013, E. I. du Pont de Nemours and Company ("DuPont") announced its intention to spin-off its Performance Chemicals business, which included DuPont's titanium technologies, fluoroproducts, and chemical solutions businesses, from the other businesses of DuPont. On July 1, 2015, this separation created a new, independent, publicly traded company named The Chemours Company ("Chemours"). In connection with the spin-off of Chemours, DuPont announced an involuntary reduction in force, under which it terminated a multitude of positions. The

benefits awarded to the terminated employees included a maximum severance benefit of twelve months' salary.

2. The remaining employees became employees of Chemours on July 1, 2015. In an effort to optimize its business and improve the efficiency of operations, Chemours announced in September 2015 a voluntary reduction in force program, called the Chemours Voluntary Separation Program ("VSP"). The VSP was formally announced in October 2015 through a letter, and was embodied in a seven-page program description entitled "Chemours Voluntary Separation Program ('VSP') October 2015" ("the VSP Summary"). The benefits provided under the VSP included "a lump sum payment equal to one week of base pay for each full year of service up to a maximum of 26 weeks and three months of COBRA coverage for medical insurance coverage, as well as a prorated discretionary bonus payment for the year of separation. (D. I. 7, ex. A at 3) The lump-sum payments were payable immediately following separation; the second, discretionary payment was payable following the year of the employee's separation date. (*Id.*)

3. Chemours required a mechanism for employees to apply for the VSP benefit, for those applications to be approved, and for an end-date to be set. Consequently, the VSP provided that interested employees were required to submit a VSP Request Form between October 9, 2015 and October 26, 2015. Chemours had final say as to those accepted for the VSP, with notice to be provided to the applicants by November 30, 2016. The VSP Summary provided no appeal procedure or any other mechanism for challenging eligibility determinations made by Chemours. Each participant's separation

2

date was determined by Chemours and fell between December 1, 2015 and March 31, 2016. (*Id.*, ex. A at 2-3)

4. At the close of the application and decision period for the VSP, Chemours announced that the voluntary reduction in force did not sufficiently reduce costs; consequently, Chemours instituted an involuntary reduction in force program call the Chemours Career Transition Program ("CTP"). In this suit, plaintiffs allege that they would not have elected to participate in the VSP had they been informed of the possibility that the CTP would be implemented with greater benefits.

5. **Standard of review.**[1] The parties apparently agree that "the existence of an employee benefit plan is integral to the merits of" plaintiffs' claims for benefits. *Henglein v. Informal Plan for Plant Shutdown Benefits for Salaried Employees*, 974 F.2d 391, 397-98 (3d Cir. 1992). Therefore, defendant's motion addressing whether or not the VSP is subject to ERISA should be brought and reviewed under Fed. R. Civ. P. 12(b)(6) (failure to state a claim). It is also appropriate for the court to consider the VSP Summary on defendant's motion to dismiss without converting it to a motion for summary judgment, because the VSP Summary was explicitly relied upon in the complaint and is undisputedly an authentic document. *See In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Ben. Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

6. "Whether a plan exists within the meaning of ERISA is a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of

---

[1]The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

3

view of a reasonable person." *Deibler v. United Food and Commercial Workers' Local Union 23*, 973 F.2d 206, 209 (3d Cir. 1992) (internal quotation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

7. The issue to be resolved in this motion practice is whether the VSP fits within ERISA's definition of "employee welfare benefit plan,"[2] that is,

> any plan, fund or program . . . established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries . . . (A) medical, surgical or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services. . . .

29 U.S.C. § 1002(1). Plaintiffs start their discussion of the issue by emphasizing the broad construction accorded to the word "plan," which is not defined by statute. *See, e.g., Okun v. Montefiore Medical Center*, 793 F.3d 277, 279 (2d Cir. 2015); *Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 75 (2d Cir. 1996) (noting the "[t]he term 'employee welfare benefit plan' has been held to apply to most . . . employer undertakings or obligations to pay severance benefits"). Defendant, for its part, relates the "strict requirements" for ERISA plans imposed by statute, including the requirements that every ERISA plan be established and maintained pursuant to a

---

[2]It is unclear from the record what document(s) comprise the ERISA "plan," as alleged by plaintiffs - the VSP Summary or some combination of the VSP Summary, the VSP FAQ, and the release signed by the participants. *See CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011) ("[T]he summary documents, important as they are, provide communication with beneficiaries **about** the plan, but . . . their statements do not themselves constitute the **terms** of the plan[.]") (emphasis in original).

4

written instrument, provide a procedure for establishing and carrying out a funding policy, describe any procedure for the allocation of responsibilities for the operation and administration of the plan, specify the basis on which payments are made to and from the plan, comply with various reporting requirements,[3] and provide a Summary Plan Description ("SPD") to plan participants. 29 U.S.C. §§ 1002(16)(A)(ii), 1022, and 1102.

8. Despite their different approaches to the dispute, the parties agree that not all severance programs are ERISA plans, a tenet consistent with the Supreme Court's analysis in *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1 (1987). Although in *Fort Halifax* the Court was reviewing a state statute that required the payment of severance benefits under certain circumstances[4] (rather than an employer-sponsored program), nonetheless, it is a critical starting point for the discussion at bar. The Court recognized in the first instance that "Congress intended pre-emption to afford employers the advantages of a uniform set of administrative procedures governed by a single set of regulations." *Id.* at 11. According to the Court,

> [t]his concern only arises, however, with respect to benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligations. It is for this reason that Congress pre-empted state laws relating to **plans**, rather than simply to **benefits.** Only a plan embodies a set of administrative practices vulnerable to the burden that would be imposed by a patchwork scheme of regulation.

---

[3]Form 5500.

[4]More specifically, the statute required employers, in the event of a plant closing, to provide a one-time severance payment to employees not covered by an express contract providing for severance pay. *Fort Halifax*, 482 U.S. at 3.

5

*Id.* at 11-12. The Court concluded that the statute under examination did not establish or require an employer to maintain an employee benefit plan.

> The requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation. The employer assumes no responsibility to pay benefits on a regular basis, and thus faces no periodic demands on its assets that create a need for financial coordination and control. . . . Once this single event is over, the employer has no further responsibility.

*Id.* at 12. During its discussion, the Court distinguished several cases in which the payment of severance benefits was deemed to be pursuant to an ERISA plan. Having reviewed these cases, they are also distinguishable from the facts at bar, as they both involved severance benefits included in a larger employment benefits package. *See Holland v. Burlington Industries, Inc.*, 772 F.2d 1140, 1143-1144 (4th Cir. 1985); *Gilbert v. Burlington Industries, Inc.*, 765 F.2d 320, 323 (2d Cir. 1985). The Court in *Fort Halifax* explained in this regard:

> The courts' conclusion [in the above cases] that [the severance benefit obligations at issue] should be . . . regarded [as ERISA plans] took into account ERISA's central focus on administrative integrity: if an employer has an administrative scheme for paying benefits, it should not be able to evade the requirements of the statute merely by paying those benefits out of general assets. Some severance benefit obligations by their nature necessitate an **ongoing administrative scheme**, but others do not. Those that do not, such as the obligation imposed in this case, simply do not involve a state law that "relate[s] to" an employ benefit "plan." 29 U.S.C. § 1144(a).

482 U.S. at 18 (emphasis added).

9. The determination of whether a program involves an "ongoing administrative scheme" is a case-by-case determination. *Id.* Plaintiffs argue that the most important factor in this regard is "the amount of employer discretion exercised when determining

an employee's right to benefits." (D.I. 9 at 9) (citing *Shaver v. Siemens Corp.*, 670 F.3d 462, 477 (3d Cir. 2012)) Defendant emphasizes that an "ongoing administrative scheme" "must by **ongoing** . . . . The 'crucial factor . . . is whether the employer has expressed an intention to provide benefits on a regular and long-term basis.'" (D.I. 7 at 11) (emphasis added) (also citing *Shaver,* 670 F.3d at 478)

10. Having reviewed the cited Third Circuit case law, several principles are apparent. First, many of the cases cited involve individual employees' severance agreements which provide benefits "only if a [future] 'triggering event' occurs, such as termination of an employee for reasons other than for cause. Thus, the circumstances of each employee's termination must be analyzed in light of these criteria, and an ongoing administrative system constituting an ERISA plan exists." *Pane v. RCA Corp.*, 667 F. Supp. 168, 171 (D. N.J. 1987), *aff'd* 868 F.2d 631, 635 (3d Cir. 1989) (the entirety of its analysis being one sentence: "It required an administrative scheme."). And although plaintiffs maintain that the hallmark of an ERISA plan is "the amount of employer discretion involved in determining an employee's right to benefits," *Zgrablich v. Cardone Industries, Inc.*, 2016 WL 427360, at *5 (E.D. Pa. Feb. 3, 2016), the lesson from these cases in narrower.[5] To wit, the only cases that have actually relied on this factor involve individual employment agreements with severance benefits "that vary based on the reason for termination," a future, contingent event. Under these

---

[5]And the court certainly recognizes that "[a]n administrative scheme '**may** arise where the employer, to determine an employee's eligibility for and level of benefits, must analyze each employee's particular circumstances in light of the [policy's] criteria,'" *Menkes v. Prudential Ins. Co. of America*, 762 F.3d 285, 290-291 (3d Cir. 2014) (citing *Shaver*, 670 F.3d at 477) (emphasis added).

7

circumstances, it makes sense to conclude that, because eligibility for benefits depends on someone determining in the future whether the termination was for cause or not, there is "the ongoing need for administration of the plan." *Zgrablich*, 2016 WL 427360 at *5.

    11. Since *Pane's* first post-*Fort Halifax* analysis, the Third Circuit has engaged in more thorough analyses which focus not so much on the discretion exercised in determining eligibility to participate, but on the "'crucial factor'" of "'whether the employer has expressed an intention to provide benefits on a regular and long-term basis.'" *Shaver*, 670 F.3d at 478 (citing *Deibler*, 973 F.2d at 209). *See also Menkes*, 762 F.3d at 290. Consistent with this observation, the Third Circuit in both *Angst v. Mack Trucks, Inc.*, 969 F.2d 1530, 1538 (3d Cir. 1992), and in *Shaver*, 670 F.3d at 477, determined that the severance obligations undertaken in those cases did not implicate ERISA because they either involved one-time lump-sum payments which "did not require the creation of a new administrative scheme," or involved the continuation of existing benefits, which "did not materially alter an existing administrative scheme." *Angst*, 969 F.2d at 1539. *See also Shaver,* 670 F.3d at 478 ("As in *Angst*, here the extension of the already-extant Westinghouse Plan for thirteen days did not require Siemens to create a separate, new administrative scheme. Nor did that extension alter the Westinghouse Plan's existing administrative scheme; it merely added a contingent step subsequent to the operation of the plan."). In contrast, the Third Circuit in *Menkes* found that the "Supplemental Coverage" at issue, which was governed by the same "Booklets and SPDs as the Basic Policies" (which plan documents demonstrated the

8

existence of a "comprehensive administrative scheme)," was part of an "overarching welfare benefit plan" that ought not to be "unbundled." 762 F.3d at 291.

12. **Analysis.** In comparing the facts of record with the case law reviewed above, the court concludes that the SVP is not an ERISA plan. Like the benefits under review in *Angst,* the one-time, lump-sum payments distributed under the SVP did not require the creation of a new administrative scheme, and the bonus payments were payable "per usual Company practices based on financial results" which, like the continuation of existing benefits for a limited duration, did not materially alter the existing administrative scheme. (D.I. 7, ex. A at 3) In short, the SVP does not implicate ERISA's "central focus on administrative integrity."[6] *Fort Halifax*, 482 U.S. at 18.

13. To the extent that there are "front-end eligibility determinations," i.e., some discretion is exercise, even the state statute examined in *Fort Halifax* had exclusions from participation. (*See* D.I. 10 at 6) *See also James v. Fleet/Norstar Fin. Grp.,* 992 F.2d 463, 467 (2d Cir. 1993) (calculating 60 days of severance pay based on employees' dates of separation was a "far cry" from an ongoing administrative scheme required to establish an ERISA plan). Plaintiffs, however, have cited no case finding that involved a voluntary severance program implicates ERISA, and have cited no examples of how any discretion was actually utilized by defendant at bar in determining participation eligibility.

13. **Conclusion.** For the reasons stated, defendant's motion to dismiss is granted. Plaintiffs' motion to compel a Rule 26(F) conference is denied as moot. An

---

[6]The court agrees with defendant that "knowledge transfer" is not an "ongoing administrative scheme" as contemplated by ERISA.

9

order shall issue.

_____
Senior United States District Judge